The next case is called Oral Argument. It is People v. Stagner. This case is called Oral Argument. It is People v. Stagner. May it please the court, counsel, I'm Edwin Anderson, jury for Jason Stagner. Mr. Stagner was charged with and convicted of a number of counts of witness harassment and violation of an order of protection. In this appeal, we challenged the witness harassment convictions. We asked the court to reverse the convictions because the trial evidence simply didn't prove the communications were done with an intent to harass or annoy and didn't create the mental anguish or distress that the law requires. Jason Stagner and his wife, Tabitha Ross, had an argument and a fight and she was hit and he was charged with domestic battery and put in jail. While he was in the Montgomery County Jail, he began making phone calls to Ms. Ross. In the Montgomery County Jail, calls from the cell block are automatically recorded and the calls are in evidence. You'll be able to hear that during the calls, there's an automatic announcement that tells the recipient who the call is from and how to accept the call or block or disconnect the call and block all further calls. So every time Tabitha Ross picked up the phone and talked with her soon-to-be ex-husband, she heard how to discontinue any communication with him. She didn't do that. She also knew that there was an order of protection that she obtained and she certainly could have gone to the sheriff and said, he's bothering me, he's violating the order of protection. She didn't do that. These charges derived from the sheriff's department having these recordings and the prosecutor deciding to act on them and act on the violation of an order of protection. Ms. Ross didn't turn this into the sheriff's department. She moved to Texas. While he was in the jail, a day or two after the incident is the first call. He calls her and you can tell there he wants out of jail. There's no question about that. But he's not telling her that he's going to do something to her if she testifies against him. He's not telling her he's going to take the kids from her if she testifies against him. He says, get me out of jail. And we need to work this out. I didn't do it on purpose. You know I didn't. We can get together and we need to keep our marriage together. And over the course of the calls, you see that the marriage is not going to work out, that she's decided she's had enough and she's going. And our contention is that any upset, any anguish that you hear in her voice has to do with failing of the marriage and the loss of the husband and the loss of the parent to her child. And not to any action that Mr. Stagner is doing trying to influence her testimony or cause her to not testify. His attitude in these calls is let's work this out, let's try and stay together. Not or else, not you say this, I'm going to do that. And that is an essential part of the charge of witness harassment is that there's got to be an attempt to harass someone because of their testimony. Whatever communication is going on here isn't about what you may say to court. It's about the failing of the marriage. He's trying to get himself out of jail, not provoke her into some modifying her testimony. The second point that we argue is that the Supreme Court's Cardamom decision shows us what the witness harassment law requires. And that is that the communication has to not just be a little unpleasant, it has to produce some form of mental anguish, unpleasant feelings. Not just unpleasant feelings, but highly unpleasant mental reactions like grief, pride, humiliation, fury. We know from her own testimony that Tabitha Ross didn't have that reaction. Her testimony was that it was hard to deal with. And our contention is, based on the nature of her testimony, it's hard to deal with because she knows that she's breaking the marriage up and leaving for Texas with her children. And he doesn't want that. She still loved Jason Stagner, whatever difficulties they had, and had some sadness over the loss of the marriage. She wasn't frightened. She wasn't humiliated. She wasn't furious. Because she kept accepting the calls when she didn't have to. And she didn't turn the calls in to the sheriff and say, he's bothering me, he's told me he's going to do this to me or that to me. And we know from the calls which we can hear that he doesn't do that. The arguments they have have to do with her taking the kids back to Texas have to do with his insistence that whatever fight they had, it was an accident. Her insistence that it wasn't. That's a miracle dispute. That's not an argument over you testify to this or else, or if you show up in court, something bad's going to happen. There's none of that in this case. And evidence that this situation doesn't amount to true witness harassment is seen in the jury's acquittals on three of the five counts that it heard. We line out in the brief how similar these calls are. And that there's very little distinction between calls one and three in the tone and the nature of what's talked about. And yet the jury convicted on one of the calls and not on the other. The point of the motion that I filed was to produce some authority on the proposition that when there's conflicting verdicts and some logical inconsistency, the reviewing court can take that into consideration in reviewing the evidence when the defendant says the evidence is too weak to uphold the convictions. Again, we're not challenging the order of protection conviction. We're challenging these convictions for witness harassment. And we ask that when this court reverses the witness harassment convictions, it order resentencing on the order of protection conviction. There are no further questions. Thank you, Your Honors. Thank you, Counsel. Thank you. May it please the court. Counsel, my name is Whitney Atkins and I represent the state of Illinois. I would just first like to note, although I won't go into it in detail because I see you've gotten the motion, that defense counsel first raises his logical inconsistency argument in a motion that the people received at 1 p.m. yesterday. And our motion is to strike defendant's motion because it is tantamount to a supplemental brief. Right. And we've granted the motion to admit, excuse me, allow supplemental authority to deny the state's objection. Okay. You're free to argue however you want on the contents of this. Okay. Thank you. Your Honors, this appeal is very simple. The sole question on review is whether there was sufficient evidence below to find the defendant guilty of harassment of a witness beyond a reasonable doubt. And the answer is equally as simple. Yes, there was overwhelming evidence. A defendant is guilty of harassment of a witness if, having the requisite intent, he communicates with the witness in such a manner as to produce mental anguish or emotional distress. Intent is inferred from the surrounding circumstances. Mental anguish and emotional distress are to have their ordinary and expansive meaning, which is a highly unpleasant emotional reaction such as anguish, grief, fright, humiliation, or fear that results from another person's conduct. The witness harassment statute does not require the victim to be threatened, only annoyed or harassed. In reviewing defendant's sufficiency of the evidence claim, this court must determine whether viewing the evidence in the light most favorable to the state, any trier effect could have found the essential elements of the crime proven beyond a reasonable doubt. The defendant had been charged with committing domestic battery on Tabitha Ross when from February 2011 to May 2011, he called her 25 times from the Montgomery County Jail where he was being held for that domestic battery charge. She answered 17 of those phone calls. At the time that he was calling her, the two had an infant child together, and they had been married for approximately six months. In call one, defendant begins the conversation with asking, quote, what are you trying to do, end quote. He screams at Ross, quote, drop the damn charges. Get me out of here, Tabitha. That's what you need to do, end quote. To which Tabitha responds, quote, I'm not dropping the damn charges, Jason. You need to learn to keep your hands to yourself, end quote. Defendant states, quote, if you loved me, this wouldn't effing make no difference. You would see, end quote. When defendant made call four, he was calling Ross for the third time that day, and call four was made just 25 minutes after call three. In call four, he begs her to turn around in her route to Texas and to stay in a hotel in Litchfield, Illinois, to which she replies, quote, Jason, how is me getting you out of trouble again going to fix your problems? You don't love me enough to put me through this abuse, end quote. He then promises not to abuse her anymore. The purpose of this call was not, as the defendant claims, to discuss his marriage with Ross. When call four is put into the framework of the other phone calls made to Ross by the defendant, it is apparent that he's calling her for the third time that day to hassle her into dropping the charges and giving the testimony that she desires. In call four, the jury could have very well deduced that he was hassling her by repetition. One drip from your faucet isn't annoying, but if it keeps dripping, that will surely annoy you. Ross testified that the calls were angry, and the defendant was being manipulative and attacking her character. This is her testimony. Ross testified that the calls were especially hard because she was in love with the defendant. Also, if you listen to these phone calls, the tone of Ross's voice, she sounds annoyed. Defendant says that, defense counsel just said that in her testimony, doesn't say that she had a highly unpleasant emotional reaction. But the witness doesn't have to say it. It can be inferred, which the trier fact did infer. The defendant says, defense counsel says that she wasn't being manipulated. These calls weren't manipulative, but this is her testimony that they were. The defendant irately made Tabitha Ross being a witness in the domestic value proceeding the subject of calls one and call four. Hence is a reasonable inference that the phone calls from her husband, whom she was in love with, filled with personal attacks and angry incessant requests to drop the charges and give the testimony he wanted, resulted in an unpleasant emotional reaction to Ross. Upon simply hearing calls one and four, examining the circumstances surrounding the calls, taking into account her testimony, it is reasonable that the trier fact inferred from the surrounding circumstances that the defendant called Tabitha Ross with the intent to harass her due to her potential testimony. The crux of defendant's argument is that he'd like this court to take the evidence and the light most favorable to him. But that is not the standard that this court is mandated to employ. All reasonable inferences from the record are to be taken in the light most favorable to the prosecution. And when the trier fact did that below, it found the defendant was guilty. Furthermore, the jury is presumed to have understood and followed the instructions and did indeed find him guilty of harassment of a witness. Had the jury found that the evidence was insufficient, they would have acquitted him or been deadlocked. So in defendant's reply brief, he states that he questions the strength of the state's evidence because the trier fact acquitted him on some calls but not on others. It simply doesn't follow that because the jury convicted him on some calls and not others that the state's evidence is weak. And that's because the content and the tone of these calls were not identical. And it's just as logical that the jury convicted defendant on some calls and not others because they carefully followed directions and they carefully considered the facts and found that some of the calls did not fall under the witness harassment statute. In support of this argument, he discussed the logical inconsistency theory. First, logically inconsistent verdicts may stand. Secondly, this is not an example of logically inconsistent verdicts for the reasons I just stated, that the content of these phone calls, the tone of Tappett's voice was not identical. Defendant has offered no affirmative evidence as to why the findings below should be disturbed. Therefore, the defendant has failed to show no reasonable jury would have found the elements of the crime proven. We ask that this court affirm the judgment below. Thank you. Counsel? The state suggests that the evidence is overwhelming. It's hard to see how the evidence can be overwhelming when a jury acquits on three of the five counts, particularly when, as I recommend the court do, listen to the calls and note the similarities, especially one in three where you have guilty or not guilty and there's harsh language, loud voices. But Cardamon, as the Supreme Court described it in Cardamon, what the witness harassment law requires is something more than hard feelings. There has to be some highly emotional reaction that's unpleasant. The person has to be frightened, humiliated, furious. We know that Tabitha Ross isn't any of those things because, as the state points out, she answered 17 calls. Not only did she answer 17 calls, she sent Jason Stagner money to keep making the calls. And that simply doesn't make sense that someone who is suffering abuse at a level that's traumatizing them is going to send money to continue the communications. The call that the state points to where Mr. Stagner, I guess it's call four, makes the third call and they talk about her driving off to Texas. In that course of that call, he's telling her that he's found an inexpensive place in Litchfield that she can stay and she doesn't have to go because of money. And she doesn't want to hear it, understandably. But his point is not, I'm going to do something horrible to you if you testify against me. It's don't take the kids to Texas, stay here so we can be a family. And again, if she were being subjected to verbal abuse at a level that constitutes harassment, she knew how to decline the phone calls. She didn't. She knew how to report to the sheriff that he's making the phone calls. She didn't. She gave him money to continue to make the phone calls. It simply doesn't follow that she suffered the kind of emotional trauma that the Supreme Court says this law requires. And this doesn't meet the standard that the witness harassment law requires. And for that reason, we'd argue that the evidence is insufficient to allow a conviction to stand. We ask you to reverse the convictions for witness harassment and remand for resentencing with order of protection. Thank you. Thank you, counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement.